```
            UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF FLORIDA
                    MIAMI DIVISION
         Case No. 13-21386-CIV-GRAHAM/SIMONTON
```

RAFAEL RODRIGUEZ,

    Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.
_____/



## ORDER

**THIS CAUSE** comes before the Court upon Defendant, State Farm Mutual Automobile Insurance Company's, Motion for Summary Judgment, Statement of Material Facts, and Memorandum of Law [D.E. 30].

**THE COURT** has considered the Motion, the Response and Reply thereto, pertinent portions of the record, and is otherwise fully advised in the premises. For the reason's stated herein, Defendant's Motion is **GRANTED**.

**I.  FACTUAL & PROCEDURAL BACKGROUND**

This is a contract dispute arising out of an automobile insurance policy (hereinafter referred to as "the Policy") between Rafael Rodriguez ("Plaintiff") and State Farm Mutual Automobile Insurance Company ("State Farm"). Plaintiff was initially employed with Eagle Brands, Inc. [D.E. 33-1 at 7]. As part of his job

1

duties, Plaintiff was required to drive his car to different retail store locations to deliver merchandising for various beer products. Id. at 7-8. Eagle Brands, Inc. required Plaintiff to carry automobile insurance with bodily injury liability limits of $100,000.00 per person, $300,000.00 per accident, and property damage limits of $50,000.00 (illustrated hereinafter as $100,000.00/$300,000.00). [D.E. 1 at ¶4]. Plaintiff first acquired the Policy in 2009 via the Manny Morin Insurance Agency. When issued, the Policy included sufficient coverage to meet Plaintiff's employee insurance requirements with Eagle Brands, Inc. [D.E. 30 at 3, ¶2].

The Policy was renewed every six months thereafter without a change in the liability coverage limits until mid-2011. [D.E. 30 at 3, ¶3; 36-1 at ¶4]. According to State Farm, in an effort to reduce his premium payments, Plaintiff initially requested his bodily injury liability coverage be reduced to $10,000.00 per person and $20,000.00 per accident (illustrated hereinafter as $10,000.00/$20,000.00) and ultimately requested to eliminate his bodily injury coverage all together. [D.E. 35]. Then, on December 10, 2012, Plaintiff was involved in an accident where his vehicle collided with a pedestrian exiting a city bus. [D.E. 33-1 at 10]. After reporting the incident, Eagle Brands, Inc. terminated Plaintiff's employment for failing to carry the required insurance liability coverages of $100,000.00/$300,000.00. [D.E. 33-1 at 15-

17]. Plaintiff maintains that he never authorized any reductions in coverage and that State Farm unilaterally changed the Policy without his knowledge or consent. [D.E. 1-3 at 2, ¶¶7-10].

On March 25, 2013, Plaintiff filed the instant suit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. [D.E. 1-3]. Plaintiff alleges a breach of contract for State Farm's refusal to provide coverage up to the initial $100,000.00/$300,000.00 bodily injury liability limits. Id. Within his claim for breach of contract, Plaintiff further alleges that he has suffered damages by having to forfeit his accrued paid vacation time with Eagle Brands, Inc. and seek new employment with less favorable medical benefits and employer-paid 401(k) contributions. [D.E. 33-1 at 65-78]. In addition, Plaintiff seeks a declaratory judgment maintaining that he should have been insured with bodily injury liability limits of $100,000.00/$300,000.00 and asks the Court to reform the Policy to provide bodily injury liability limits of $100,000.00/$300,000.00 due to "either a unilateral or a mutual mistake of fact made by [the] parties." [D.E. 1-3 at 6, ¶51].

State Farm disagrees with Plaintiff's position and timely removed the action to this Court on April 19, 2013. [D.E. 1]. After conducting discovery, State Farm now moves for summary judgement. [D.E. 30]. For the Court's consideration, the parties submit, *inter alia*: Plaintiff's deposition testimony; Plaintiff's Response to

3

Defendant's Request for Admissions; the affidavit of Elise Mendez, Account Manager at Manny Morin Insurance Agency, Inc., with call logs attached; the affidavit of Jonathan Owen, State Farm's Underwriting Team Manager; and copies of notices, declarations pages, and insurance cards sent to Plaintiff. [D.E. 33, 34, 35, 36][1]. Based upon a thorough review of the record, the arguments presented and supporting case law, the Court finds that summary judgment is appropriate in State Farm's favor.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  That burden is discharged if the moving party shows the Court that there is "an absence of evidence to support the non-moving party's case." Id. at 325.

---

[1] "The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999). However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" Id. at 1323.  Therefore, the Court will consider the above-mentioned affidavits and documents on record as they may be reduced to an admissible form at trial.

Once the moving party has discharged its burden, the non-moving party must designate specific facts showing that there is a genuine issue of material fact. Id. at 324. Issues of fact are "genuine" only if a reasonable fact finder considering the evidence presented could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Material facts are those that will affect the outcome of the trial under the substantive law. Id. at 248. In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the non-moving party. Id. at 261, n.2. All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. Hayden v. First Nat'l. Bank of Mt. Pleasant, 595 F.2d 994, 996-97 (5th Cir. 1979)[2].

## III. DISCUSSION

Although State Farm concedes that a genuine issue of material fact exists on the question of whether Plaintiff actually requested the reductions in his liability coverage, it nonetheless argues that judgment as a matter of law is appropriate in its favor because: (1) Plaintiff's claims for declaratory judgment and breach of contract claim are barred by ratification, waiver, or estoppel; (2) the circumstances of the case do not allow for reformation thereby defeating Plaintiff's request for declaratory judgment; and

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

(3) Plaintiff has not sustained any recoverable damages. The Court finds State Farm's arguments to be well-taken in light of the record evidence.

### A. Ratification, Waiver, and Estoppel

State Farm first argues that Plaintiff ratified the policy changes that ultimately eliminated his bodily injury liability coverage by failing to act on the notices and declarations pages sent to him and is estopped from contesting the terms of the Policy through waiver. [D.E. 30 at 10-14]. In resolving this issue, the Court must first address the procedural infirmities presented with State Farm's argument.

Pursuant to Federal Rule of Civil Procedure 8(c)(1), "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: estoppel . . . and, waiver." Fed.R.Civ.P. 8(c)(1). Although ratification is not listed in the plain language of Rule 8(c)(1), the Court looks "to state law to inform the determination of whether a certain defense is 'any other matter constituting an avoidance or affirmative defense' under the federal rule." Proctor v. Fluor Enterprises, Inc., 494 F.3d 1337, 1350 (11th Cir. 2007); see also Morgan Guar. Trust Co. v. Blum, 649 F.2d 342, 344 (5th Cir. Unit B 1981)("In diversity of citizenship actions, state law defines the nature of defenses, but the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs."). Under Florida

6

law, "[r]atification is an affirmative defense to a contract action [] and should be pleaded as such . . . ." Avila South Condo. Ass'n, Inc. v. Kappa Corp., 347 So.2d 599, 604 (Fla. 1977). Therefore, the Court will construe State Farm's argument concerning ratification as an affirmative defense under Rule 8(c)(1). Proctor, 494 F.3d at 1350. In addition, an affirmative defense must "be presented in a responsive pleading, and a party waives its right to advance an affirmative defense by failing to assert it as such." Steger v. General Elec. Co., 318 F.3d 1066, 1077 (11th Cir. 2003)(citing Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp., 710 F.2d 1528, 1537 (11th Cir. 1983)).

Here, State Farm relies on First Nat'l Ins. Agency, Inc. v. Leesburg Transfer & Storage, Inc., 139 So.2d 476 (Fla. 2d DCA 1962) for its ability to assert waiver and estoppel as defenses to Plaintiff's claims. See [D.E. 30 at 10]. Despite First National being in a different procedural posture, the Court agrees with its holding insofar as estoppel and waiver should be available defenses in breach of insurance contract actions. See First Nat'l Ins. Agency, Inc., 139 So.2d at 480-481 ("Though we do not imply that the terms estoppel and waiver are in every instance synonymous, the particular variety of estoppel herein sought to be invoked amounts as well to an alleged waiver by plaintiff . . . We feel that the defense of estoppel is a legal defense to the complaint in this case and should not have been stricken."). However, State Farm's

7

reliance on First National is misplaced by virtue of its failure to raise estoppel and waiver as affirmative defenses in its responsive pleading. See Steger, 318 F.3d at 1077. Instead, State Farm only asserts two affirmative defenses: (1) "non-occurrence of a condition precedent;" and (2) ratification. [D.E. 24 at 5, ¶¶61-62].

Even though "issues not raised in the pleadings may be treated as if they were properly raised when they are 'tried by express or implied consent of the parties,'. . . or are included in a pretrial order," the posture of this case does not lend itself to such consideration. Steger, 318 F.3d at 1077. Moreover, "in deciding waiver issues under Rule 8(c)," courts consider "whether a plaintiff had notice of the unpled defense or was prejudiced by the lack of notice." Proctor, 494 F.3d at 1350. The instant motion is the first time State Farm raises the defenses of estoppel and waiver. Therefore, Plaintiff did not receive notice of State Farm's intent to assert these affirmative defenses prior to summary judgment. Id.; see also Sweet v. Sec'y, Dept. of Corrections, 467 F.3d 1311, 1321 (11th Cir. 2006); Grant v. Preferred Research, Inc., 885 F.2d 795, 797-98 (11th Cir. 1989); Hassan v. U.S. Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988)(internal citations omitted). Procedurally, State Farm "neglected one step in the process: it should have filed a motion to amend its [responsive] pleading before filing its motion for summary judgment." Sweet, 467

F.3d at 1321. Therefore, the Court will not consider the portions of State Farm's argument concerning waiver and estoppel.

On the other hand, the Court will consider State Farm's argument regarding ratification since it was appropriately pled as an affirmative defense. Accordingly, "[a]n agreement is deemed ratified where the principle has full knowledge of all material facts and circumstances relating to the unauthorized act or transaction at the time of the ratification." Frankenmuth Mut. Ins. Co. v. Magaha, 769 So.2d 1012, 1022 (Fla. 2000). In other words, State Farm "must show that [Plaintiff] accepted the agent's conduct 'upon full knowledge of all material facts, or that he was willfully ignorant, or purposely refrained from seeking information, or that he intended to adopt the unauthorized act at all events, under whatever circumstances." Computel, Inc. v. Emery Air Freight Corp., 919 F.2d 678, 685 (11th Cir. 1990)(quoting Oxford Lake Line v. First Nat'l Bank of Pensacola, 24 So. 480, 483 (Fla. 1898)).

Viewing the record evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff remained willfully ignorant and refrained from seeking information regarding the changes to his insurance coverage. Computel, 919 F.2d at 685. It is undisputed that, on August 5, 2011, State Farm mailed to Plaintiff a declarations page reflecting a change in his bodily injury liability limits from $100,000.00/$300,000.00 to

9

$10,000.00/$20,000.00. [D.E. 30 at 4, ¶7; 36-1 at ¶¶6-8; 36-2; 36-3]. Five months later, on January 5, 2012, State Farm mailed Plaintiff a Premium Notice for the upcoming six-month policy period. [D.E. 30 at 4, ¶8; 36-1 at ¶9; 36-4]. This Premium Notice shows the Policy as providing bodily injury liability limits of $10,000.00/$20,000.00. [D.E. 36-4]. Six months later, on July 5, 2012, State Farm mailed Plaintiff a Premium Notice for the next six-month period starting on August 26, 2012. [D.E. 30 at 4, ¶9; 36-1 at ¶10; 36-5]. This Premium Notice stated the same bodily injury liability limits as the one before – i.e., $10,000.00/$20,000.00. [D.E. 36-5].

Thereafter, on July 20, 2012, it is undisputed that the Policy was changed to no longer provide bodily injury liability coverage and Plaintiff's premium payment was reduced as a result of this change. [D.E. 30 at 5, ¶12; 36-1 at ¶11]. Again, State Farm mailed Plaintiff a declarations page reflecting his new coverage limits on July 26, 2012. [D.E. 30 at 5, ¶13, 36-1 at ¶12, 36-6]. At the end of this declarations page, the following words appear: "THIS POLICY DOES NOT PROVIDE BODILY COVERAGE INJURY LIABILITY INSURANCE OR ANY OTHER COVERAGE FOR WHICH A SPECIFIC PREMIUM CHARGE IS NOT MADE AND DOES NOT COMPLY WITH THE BODILY INJURY LIABILITY REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAW." [D.E. 36-6] (emphasis in original). Moreover, it is undisputed that State Farm mailed Plaintiff new insurance cards, indicating that the Policy did not

10

contain bodily injury liability coverage. [D.E. 30 at 5, ¶14; 36-1 at ¶13; 36-7]. On the same day, State Farm also mailed Plaintiff a Notice of Automated Payment indicating: (1) "Policy coverage changed;" (2) "Rates have been changed;" and (3) "**Please refer to your policy documents or contact your State Farm agent for additional information about this change.**" [D.E. 30 at 5, ¶15; 36-1 at ¶15; 36-8] (emphasis in original). However, the Courts analysis does not end here.

State Farm essentially argues that Plaintiff was on actual, or at the very least, inquiry notice of the changes concerning his insurance coverage based upon the aforementioned notices and declarations pages being sent to him. Nevertheless, "[i]n order to charge a person with notice of a fact of which he might have learned by inquiry, the circumstances known to him must be such as a should reasonably suggest inquiry and lead him to inquiry." Citizens Prop. Ins. Corp. v. European Woodcraft & Mica Design, Inc., 49 So.3d 774, 777 (Fla. 4th DCA 2010)(internal quotation omitted).

Here, Plaintiff denies contacting the Manny Morin Agency to reduce his coverage; however, he admits to "always receiv[ing]" his insurance cards and declarations pages. [D.E. 33-1 at 33, 42, 49]. Plaintiff also testifies that he did not read the policies and declarations pages sent to him by State Farm. [D.E. 33-1 at 47]. Moreover, Plaintiff testifies that he did not look at his insurance

11

cards to see the changes in his coverage. [D.E. 33-1 at 33]. On these facts, Plaintiff's behavior rises to the level of willful ignorance. Computel, 919 F.2d at 685. Indeed, "a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that [] will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand." Citizens, 49 So.3d at 777-778. Just as "an insured cannot avoid liability for a provision in an insurance application he claims he did not read," Plaintiff cannot take the position that "he did [not] have a reason to meticulously verify each and every document sent to him to ensure that he had the coverage he contracted for." Id. at 778 (citing Nationwide Mut. Fire Ins. Co. v. Kramer, 725 So.2d 1141, 1143 (Fla. 2d DCA 1998)); [D.E. 44 at 8].

Furthermore, Plaintiff "must take responsibility for [his] own failure to read and respond to the enclosed notices." Hartford Ins. Co. of the Midwest v. Atkinson, 623 So.2d 549, 550 (Fla. 2d DCA 1993). Plaintiff attempts to avoid this responsibility through his testimony concerning his inability to speak and comprehend the English language.[D.E. 33-1 at 28]. However, Plaintiff testifies that he has used the Manny Morin Agency as his insurance agent for "an average of five, six years." [D.E. 33-1 at 14]. Plaintiff further admits that he spoke to a representative at the Manny Morin Agency about a change in his premium payment in Spanish and that he

12

did not ask for an explanation of certain coverage terms stated to him in English. [D.E. 33-1 at 27-28]. Plaintiff cannot rest on his inability to comprehend English in order to avoid being on notice of changes to the Policy. Plaintiff could have simply sought a Spanish translation of any unclear terminology through a representative at the Manny Morin Agency. Instead, Plaintiff refrained from seeking clarity and chose not to read the correspondence from State Farm regarding his insurance coverage. [D.E. 33-1 at 33, 47]; Computel, 919 F.2d at 685. As such, the Court finds that Plaintiff's behavior impliedly ratified the changes to the Policy and, as a result, Plaintiff is not entitled to a declaratory judgment (Count I). See generally Public Affairs Assoc., Inc. v. Rickover, 369 U.S. 111, 112 (1962)("The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.").

**B. Breach of Contract**

Similarly, the Court finds that judgment as a matter of law is appropriate in State Farm's favor on Plaintiff's claim for breach of contract (Count II). In order to prevail on a "breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Vega v. T-Mobile U.S.A., Inc., 564 F.3d 1256, 1272 (11th Cir. 2009); see

also <u>Bland v. Freightliner LLC</u>, 206 F.Supp.2d 1202, 1210 (M.D. Fla. 2002); <u>Merin Hunter Codman, Inc. v. Wackenhut Corrs. Corp.</u>, 941 So.2d 396, 398 (Fla. 4th DCA 2006). If a plaintiff fails to establish a prima facie case, summary judgment is warranted. <u>Pace v. Southern Ry. System</u>, 701 F.2d 1383, 1391 (11th Cir. 1983). Here, the parties do not contest the existence of a contract. Therefore, the Court's analysis will focus on the issues of material breach and damages.

Under Florida law, "[t]o constitute a material breach, a party's non-performance of a contract must be such as to go to the essence of the contract." <u>Beefy Trail, Inc. v. Beefy King Int'l., Inc.</u>, 267 So.2d 853, 857 (Fla. 4th DCA 1972). Plaintiff states that he "demanded that State Farm provide coverage up to the $100,000.00/$300,000.00 [bodily injury] limits he was supposed to have" and that "State Farm has denied that such [bodily injury] limits exists [sic] and refused to provide said coverage for the claim made against [him]." [D.E. 1-3 at 5, ¶¶38-39]. Given the Court's finding that Plaintiff impliedly ratified the changes to the Policy as written in the declarations pages sent by State Farm, a material breach does not exist as a matter of law. <u>Computel</u>, 919 F.2d at 685; <u>see</u> <u>generally</u> <u>Nationmotor Club, Inc. v. Stonebridge Cas. Ins. Co.</u>, 2013 WL 6729664, *16 (S.D. Fla. 2013). Furthermore, since Plaintiff cannot establish a material breach, it is not necessary for the Court to entertain State Farm's argument

14

concerning the nature of Plaintiff's recoverable damages. Thus, Plaintiff cannot establish the elements necessary for his breach of contract claim (Count II) and summary judgment is appropriate in State Farm's favor.

**C. Reformation**

Lastly, Plaintiff seeks equitable relief and asks the Court to reform Plaintiff's policy to reflect $100,000.00/$300,000.00 in bodily injury coverage. [D.E. 1-3 at 7, ¶55]. Plaintiff maintains that "[t]here was either a unilateral or a mutual mistake of fact made by parties/[State Farm] that resulted in the insurance policy [bodily injury] limits being lowered." Id. at ¶51. The Court finds Plaintiff's argument to be unavailing in light of the record evidence and decisional law on this issue.

A court sitting in equity "has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument." Goodall v. Whispering Woods Center, LLC, 990 So.2d 695, 699 (Fla. 4th DCA 2008)(citing Tobin v. Mich. Mut. Ins. Co., 948 So.2d 692 (Fla. 2006)). Reformation will also provide relief for a "'unilateral mistake [when] the mistake goes to the substance of the agreement, is not the result of a lack of due care, and where the other party has not relied upon the mistake to his detriment.'" Goodbody & Co., Inc. v. Sultan, 346 F.Supp.

1375, 1376 (S.D. Fla. 1972)(internal quotation and citation omitted).

Courts consider a mistake to be mutual "when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." Goodall, 990 So.2d at 699. The record in this case does not contain any evidence to support the conclusion that the changes to Plaintiff insurance coverage was the result of any scrivener's error or inadvertence. To the contrary, the changes to Plaintiff's insurance coverage occurred over the course of approximately one year prior to Plaintiff's accident. [D.E. 30 at 4, ¶¶7-9, 12-15]. It is undisputed that State Farm notified Plaintiff of the changes made to his insurance coverage multiple times and Plaintiff failed to read or take any action to correct any erroneous terms included therein. Id.; [D.E. 30 at 4, ¶¶24-28]. Therefore, Plaintiff is not entitled to reformation based upon the existence of a mutual mistake. See Henning v. Jefferson Standard Life Ins. Co., 129 F.2d 225, 226 (5th Cir. 1942)(holding that reformation on the basis of mutual mistake was not appropriate where "the insured, though advised time and time again [by insurer . . . ], did nothing to indicate that he had a different understanding or to have the alleged mutual mistake corrected.").

Likewise, the genesis of Plaintiff's claim of a unilateral mistake comes from his own lack of diligence in responding to State

16

Farm's correspondence. Goodbody, 346 F.Supp. at 1376. Since the record does not show any fraudulent or inequitable behavior by State Farm, Plaintiff cannot rely on the equitable doctrine of reformation in seeking relief. Nordberg v. Green, 638 So.2d 91, 93 (Fla. 3d DCA 1994)(quoting Graham v. Clyde, 61 So.2d 656, 657 (Fla. 1952))("If one's mistake is due to his own negligence and lack of foresight and there is an absence of fraud or imposition, equity will not relieve him."); see also Barber v. America's Wholesale Lender, 542 Fed.App'x 832, 837 (11th Cir. 2013). Therefore, the Court finds that the circumstances of this case do not entitle Plaintiff to reformation (Count III) and judgment as a matter of law is appropriate in State Farm's favor.

**IV. CONCLUSION**

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant, State Farm Mutual Automobile Insurance Company's, Motion for Summary Judgment, Statement of Material Facts, and Memorandum of Law [D.E. 30] is **GRANTED.** It is further

**ORDERED AND ADJUDGED** that Defendant State Farm shall submit a proposed Final Judgment within fourteen (14) days from the entry of this Order. It is further

**ORDERED** that this case is removed from the Court's trial calendar. It is further

17

**ORDERED** that the Clerk of Court shall **CLOSE** this case and all other pending motions are **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of May, 2014.

s/ Donald L. Graham
DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record